UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
:
RICHARD A. SEABOLT,                 :
                                    :       CASE NO. 5:13-CV-02516
        Plaintiff,                  :
                                    :
vs.                                 :       OPINION & ORDER
                                    :       [Resolving Docs. 1, 16, & 17]
COMMISSIONER OF SOCIAL              :
SECURITY ADMINISTRATION,            :
                                    :
        Defendant.                  :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Magistrate Judge Vernelis Armstrong recommends this Court affirm the Social Security Commissioner's denial of supplemental security income and disability insurance benefits to Plaintiff Richard Allen Seabolt.[1] Because substantial evidence supported the Administrative Law Judge's (ALJ's) conclusions and the ALJ did not abuse her discretion, the Court **ADOPTS** the recommendations of the Magistrate Judge with minor modifications and **AFFIRMS** the Commissioner's denial of benefits.

## I. Factual and Procedural Background

On August 13, 2010, Plaintiff Richard Allen Seabolt applied for supplemental security income and disability insurance benefits.[2] After the Social Security Administration denied his applications, Seabolt requested a hearing.[3] On May 11, 2012, Administrative Law Judge ("ALJ") Virginia Robinson held a hearing on Plaintiff's applications. A neutral vocational expert testified

---

[1] Doc. 16.
[2] Doc. 13 at 142-44 (disability insurance benefits) & 150-54 (supplemental security income).
[3] *Id.* at 138-39.

Case No. 5:13-CV-02516
Gwin, J.

at the ALJ hearing.[4]

At the hearing, the Plaintiff testified that he had (1) chronic obstructive pulmonary disease, (2) chronic upper respiratory disease, (3) a pinched nerve, (4) neck and low back pain, and (5) right-hand numbness.[5] Plaintiff said he risked falling if he walked more the 300 feet unless he took a break. The Plaintiff also testified that he could not do any tasks that required repetitive hand motions and could not do work that required him to raise his hands over his head.[6] And he said that medication for pain prevention was ineffective.[7] But Plaintiff said he could sit for a long period of time.[8]

On July 16, 2012, the ALJ denied Plaintiff's applications.[9] The ALJ found that Seabolt had a residual functional capacity that allowed light work with limitations. The ALJ found Seabolt could only work in positions with: 1) a sit-stand option; 2) no ladder, rope or scaffold climbing; 3) no concentrated exposure to extreme cold, heat, or humidity; or moderate exposure to pulmonary irritants; and 4) no concentrated exposure to dangerous machinery or unprotected heights.[10]

Based on this residual functional capacity and the vocational expert testimony, the ALJ concluded that Seabolt could work as a mail clerk, a marker, and a routing clerk.[11] Because sufficient numbers of those jobs exist in the national economy, the ALJ concluded that Plaintiff

---

[4] *Id.* at 41.
[5] *Id.* at 56-59 & 62.
[6] *Id.* at 57-58 & 62.
[7] *Id.* at 59.
[8] *Id.* at 58.
[9] *Id.* at 36.
[10] *Id.* at 31.
[11] *Id.* at 35.

Case No. 5:13-CV-02516
Gwin, J.

had not established a right to supplemental security income or disability benefits.[12]

Most relevant to Plaintiff's objections to the Magistrate Judge's recommendation, the ALJ considered an x-ray and MRI of Plaintiff's spine in determining Plaintiff's residual functional capacity.[13]

The medical records indicate that on August 30, 2011, Plaintiff's doctor took an x-ray of Plaintiff's back.[14] The doctor reported:

> Five lumbar type vertebrae are identified. There is no compression deformity. Mild degenerative changes of the facet joints at L4-L5 and L5-S1. There is mild to moderate foraminal narrowing at L5-S1. Atherosclerotic changes of the abdominal aorta. Normal lordosis.
>
> Impression:
> Degenerative changes at L4-L5 and L5-S1.[15]

The doctor recommended waiting for further imaging.[16]

On September 10, 2011, Plaintiff's doctors took an MRI of Plaintiff's back.[17] The doctor reported:

> Five lumbar type vertebral bodies. Mild thoracolumbar scoliosis. Degenerative changes in the intervertebral disc at L5-S1 level. Focal annular tear. There is straightening of the normal lumbar lordotic curvature. The spinal cord ends at L1 level. Conus medullaris and cauda equina are normal.
>
> T12-L1, L1-L2, L2-L3 level: The central canal is adequate with patent bilateral neural foramen.
>
> L3-L4 level: Diffuse disc bulge with left far lateral disc herniation. Disc material indents the left side exiting nerve root.

---

[12] *Id.* at 35-36.
[13] *Id.* at 33.
[14] *Id.* at 315.
[15] *Id.*
[16] *Id.*
[17] *Id.* at 315-16.

Case No. 5:13-CV-02516
Gwin, J.

> L4-L5 level: Central canal is adequate. Bilateral neural foramen are patent.
>
> L5-S1 level: Focal annular tear with small central disc herniation. Central canal is adequate. Mild bilateral neural foramen compromise from disc osteophyte.
>
> Impression:
> 1. Diffuse disc bulge with left far lateral bulging disc indenting the exiting nerve root at L3-L4 level.
>
> 2. Focal annular tear with small central disc herniation. Mild bilateral neural foramen compromise from disc osteophytes.[18]

The ALJ said the x-ray showed that Plaintiff's lumbar spine had "only mild facet arthritic changes" and that the MRI showed "disc herniations."[19] The ALJ described the herniations and nerve root impingement from the MRI as "mild in nature" and not "reasonably support[ing] the extreme pain and falling episodes that the claimant has described."[20]

After the ALJ denied Seabolt's applications, Seabolt appealed.[21] On September 10, 2013, the Appeals Council denied Seabolt's request for review.[22] Seabolt then filed this lawsuit.[23]

On July 17, 2014, Magistrate Judge Armstrong recommended that the Court affirm the Commissioner's decision denying supplemental security income and disability insurance benefits.[24] Plaintiff has timely objected to the Report and Recommendation.[25]

---

[18] *Id.* at 316.
[19] *Id.* at 33.
[20] *Id.*
[21] *Id.* at 22.
[22] *Id.* at 5.
[23] Doc. 1.
[24] Doc. 16.
[25] Doc. 17. Defendant has filed a response in support of the Magistrate Judge's Report and Recommendation. Doc. 18.

-4-

Case No. 5:13-CV-02516
Gwin, J.

## II. Legal Standard

To establish disability under the Social Security Act, a claimant must show that he is unable to engage in any substantial gainful activity because of a "medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months."[26] Agency regulations establish a five-step sequential evaluation to determine whether a claimant is disabled.[27] The claimant's impairment must prevent him from doing his previous work, as well as any other work existing in significant numbers in the national economy.[28]

The Federal Magistrates Act requires a district court to conduct a *de novo* review of the claimant's objections to a report and recommendation.[29] A final decision of the Social Security Commissioner made by an ALJ is, however, not reviewed *de novo*. A district court determines only whether the ALJ's decision was "supported by substantial evidence and was made pursuant to proper legal standards."[30]

Substantial evidence is evidence that a "reasonable mind might accept as adequate to support a conclusion."[31] The substantial evidence standard requires more than a scintilla, but less than a preponderance of the evidence.[32] In deciding whether substantial evidence supports the ALJ's decision, a court should not try to resolve conflicts in evidence or decide questions of credibility.[33]

---

[26] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).
[27] 20 C.F.R. §§ 404.1520, 416.920.
[28] 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).
[29] 28 U.S.C. § 636(b)(1).
[30] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).
[31] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted).
[32] *See id.*
[33] *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

Case No. 5:13-CV-02516
Gwin, J.

The district court may look into any evidence in the record, regardless of whether it has been cited by the ALJ.[34] When substantial evidence supports the ALJ's decision, a court may not reverse, even if the court would have reached a different conclusion.[35]

### III. Analysis

Plaintiff makes (1) a generalized objection to Magistrate Judge Armstrong's Report and Recommendation. Plaintiff also specifically objects to (2) Magistrate Judge Armstrong's recommendation that the Court find the ALJ did not abuse her discretion by reviewing the x-ray and MRI records without a medical expert and (3) her recommendation that the Court find the ALJ's evaluation of the records was supported by substantial evidence.

The Court addresses each objection in turn.

**A.   Generalized Objection**

Plaintiff says that he "respectfully disagrees with the Magistrate Judge's findings and asks this Court to decline to adopt the Report and Recommendation. Plaintiff objects in full, but specifically objects as follows."[36]

Plaintiff's "object[ion] in full" loses. "A general objection to the entirety of the magistrate's report has the same effects as would a failure to object."[37]

Accordingly, the Court will only consider Seabolt's specific objections to the Magistrate Judge's Report and Recommendation.

**B.   Need for a Medical Expert to Interpret Radiographic Records**

---

[34] *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).
[35] *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987).
[36] Doc. 17 at 1.
[37] *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

-6-

Case No. 5:13-CV-02516
Gwin, J.

Seabolt says the ALJ abused her discretion by not having a medical expert review the radiographic records.[38] He says that the ALJ did not have "'the expertise to make medical judgments'" about the radiographic evidence and, therefore, should have called a medical expert to explain the records.[39]

Federal regulations allow an ALJ to call a medical expert to explain medical records but do not require her to do so.[40] Accordingly, the decision to call an expert to explain records rests in the discretion of the ALJ.

In *Winning v. Commissioner of Social Security*, Judge O'Malley remanded an action to the Commissioner because the ALJ "substitute[d] her own lay opinion of mental illness for that of a medical expert."[41] The court noted that "ALJs are not mental health experts" and that "mental health disorders require specialized training to evaluate and diagnose."[42] Therefore, when the ALJ "discredit[ed] Winning's testimony regarding her anxiety . . . without relying on *any* medical evidence or authority," the ALJ improperly "used her own opinions about what symptoms a person with anxiety should exhibit."[43]

This case is different. Here, the ALJ did not rely solely on the ALJ's interpretation of the x-ray and MRI images without reference to other medical evidence in the record. Rather, the ALJ reviewed the treating doctor's own notes about the images and his impressions.

Because the ALJ reviewed Plaintiff's doctor's notes of the radiography, the ALJ could

---

[38] Doc. 17 at 2.
[39] *Id.* (quoting *Winning v. Comm'r of Soc. Sec.*, 661 F. Supp. 2d 807, 823 (N.D. Ohio 2009)).
[40] 20 C.F.R. §§ 404.1527(e)(2)(iii), 416.927(e)(2)(iii).
[41] 661 F. Supp. 2d at 824.
[42] *Id.* at 823.
[43] *Id.* at 824 (emphasis in original).

Case No. 5:13-CV-02516
Gwin, J.

use her discretion to determine whether she needed an expert to interpret those notes. An ALJ must review many notes from many treating physicians in reaching a decision. The radiographic records do not appear to be particularly complicated or difficult to understand. Therefore, the Court concludes the ALJ did not abuse her discretion by interpreting the doctor's notes without the assistance of another medical expert.

**C.     The Accuracy of the ALJ's Reading of the Radiographic Records**

Seabolt says that "the ALJ's interpretation [of the radiographic records] was factually inaccurate, as she found the L3-4 nerve root impingement to be 'mild' when in fact it was not characterized as such on the image report itself."[44]

In the radiographic records, Plaintiff's doctor noted, "L3-L4 level: Diffuse disc bulge with left far lateral disc herniation. Disc material indents the left side exiting nerve root."[45] Plaintiff is correct that Plaintiff's doctor did not describe the disc bulge, the herniation, or the nerve indentation as mild. But the doctor also did not indicate that they were severe. The doctor did describe Plaintiff's other spinal issues as "small" or "minor."[46] And the ALJ noted that the record supported Plaintiff's claims of lower back pain and lower extremity pain and weakness.[47]

Based on other medical evidence, the ALJ also concluded that the severity and frequency of Plaintiff's symptoms were not as great as Plaintiff said. Leg testing showed Plaintiff could move bilaterally up through sixty degrees, and he had not lost any strength in his lower

---

[44] Doc. 14 at 8.
[45] Doc. 13 at 315-16.
[46] *Id.*
[47] *Id.* at 33-34.

Case No. 5:13-CV-02516
Gwin, J.

extremities.[48]

Although this is a close call, the Court concludes that the ALJ's error was harmless because "remand . . . would be an idle and useless formality."[49]

When read correctly, the radiographic records show that Plaintiff experiences lower back pain and problems with his lower extremities due to his spinal column. The ALJ acknowledged that.[50]

The records, however, do not show whether the claimed frequency and severity of Plaintiff's symptoms are consistent with the medical evidence; the notes do not say whether the bulging disc is mild or severe. Accordingly, the radiographic evidence neither disproves nor supports Plaintiff's claims on the severity and frequency of his symptoms.

The ALJ independently noted that the Plaintiff's allegations about the severity and frequency of his symptoms were inconsistent with the clinical records of Plaintiff's care, specifically the leg raise testing and his muscle strength.[51]

Therefore, even after the radiographic records analysis is corrected, other substantial evidence exists in the record to support the ALJ's finding that Plaintiff's symptoms were not as severe and frequent as he said.

### IV. Conclusion

The Court **OVERRULES** Plaintiff's objection to Magistrate Judge Armstrong's Report and

---

[48] *Id.* at 33.
[49] *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 428 (6th Cir. 2007).
[50] Doc. 13 at 33 ("[T]hese findings support the presence of lower back pain and lower extremity radiculopathy.").
[51] *Id.*

Case No. 5:13-CV-02516
Gwin, J.

Recommendation except that the Court concludes that an error in reading the radiographic evidence existed, but was harmless in light of the other evidence regarding the disability.  The Court has reviewed the Magistrate Judge's other recommendations and finds them correct.  For the foregoing reasons, the Court **ADOPTS** the Report and Recommendation of Magistrate Judge Armstrong with the noted caveat and **AFFIRMS** the Commissioner's denial of benefits.

    IT IS SO ORDERED

Dated: August 19, 2014                     s/     *James S. Gwin*
                                                           JAMES S. GWIN
                                                           UNITED STATES DISTRICT JUDGE